J-S11017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: E.W., AKA E.C.W., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.W., FATHER | : : : : : : : | |
| | : | No. 2 WDA 2021 |

Appeal from the Order Entered November 24, 2020,
in the Court of Common Pleas of Washington County,
Orphans' Court at No(s): Docket No. 63-20-0765.

BEFORE:   STABILE, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: JUNE 1, 2021**

R.W. (Father) appeals the order granting the petition filed by Washington County Children and Youth Services (CYS) to involuntarily terminate his rights to two-year-old son, E.W. (Child), pursuant to the Adoption Act. ***See*** 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).  After review, we affirm.[1]

The record discloses the relevant factual and procedural history: Child was born in January 2018.  In Spring 2018, the family came to the attention of CYS following allegations that Mother abused illicit drugs and had committed related criminal offenses; Father did not live with Child and Mother.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court also terminated the parental rights of M.D.M. (Mother), who did not appeal.

The lower court adjudicated Child dependent on May 21, 2018. Father initially questioned his parentage before his relationship was established through genetic testing. Still, Father indicated that he was unable to care for Child, because he was already caring for a daughter. Consequently, the court placed Child with Maternal Grandmother, and ordered services for the parents.

The court ordered Father to achieve certain goals to aid with reunification. The goals were: to complete random drug and alcohol screens; to complete a drug and alcohol assessment; to participate in parenting education and domestic violence counseling;[2] participate in an individual psychological evaluation and interactional evaluation with Child.

Over the course of the dependency proceedings, Father was inconsistent in accomplishing these goals; at the time of the termination hearing, the court determined Father's level of compliance was "moderate." Importantly, Father did not remain clean and sober. Of the 47 drug screens that Father was ordered to provide, Father failed to appear for 34 of them. Father tested positive for 12 of the 13 screens he did provide. Father tested positive twice for cocaine. He also used other controlled substances, perhaps marijuana most regularly – Father did not obtain authorization to consume medical marijuana. Importantly, Father failed to understand how his drug use posed legal liability, which in turn, could affect his ability to parent. Eventually,

---

[2] The reason for this goal was the fact that a Protection From Abuse petition was filed against Father. No final order was entered, however, after the party seeking protection did not appear for the hearing.

Father did complete a drug and alcohol assessment and began treatment, but he was unsuccessfully discharged from the program in 2019.

Similarly, Father did not complete either the anger management or domestic violence programs, because he felt he did not need those services. Father completed the parenting education program, but only after CYS filed the termination petition. Father's visitations with Child were irregular. Often, Father would go weeks without visiting Child. When he would visit, Father would be on his phone and unengaged. Father also refused to participate in the psychological and interactional evaluations for several months, before ultimately complying. Father also refused to follow court ordered recommendations to adjust his lifestyle.

As the proceedings lingered, Child was removed from Maternal Grandmother's home after Maternal Grandmother failed to adhere to the dependency orders. The court placed Child in the foster home where he now resides. In July 2020, CYS petitioned to terminate Father's rights. The orphans' court held the hearing on November 12, 2020; at this time, Child had been out of Father's care for approximately 31 months. On November 20, 2020, the court granted the petition and terminated Father's rights.[3] He timely filed this appeal.

Father presents the following issues for our review, which we reorder for ease of disposition:

---

[3] The order was docketed on November 24, 2020.

1. Is the trial court's determination that [Father]s conduct for a period of at least six months immediately preceding the filing of the petition has evidenced a settled purpose of relinquishing parental claim to the [Child] or has refused or failed to perform parental duties supported by the evidence?

2. Is the trial court's determination that the conditions or causes of incapacity, abuse, neglect or refusal of [Father] cause[d] [Child] to be without essential parental care, control or subsistence and that the conditions and causes of incapacity, abuse, neglect or refusal cannot or will not be remedied by [Father] supported by the evidence?

3. Did the trial court commit an error of law determining that the conditions which led to the removal or placement of [Child] would likely not be remedied within a reasonable period of time?

4. Did the trial court commit an error of law in determining that termination of [Father's] parental rights would serve the needs, welfare or best interest of [Child]?

5. Did the trial court commit an error of law in determining [CYS] sustained its burden of proof by clear and convincing evidence that [Father's] parental rights should be terminated under the Adoption Act?

Father's Brief at 5-6.

We review these issues mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that

often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.,* 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Instantly, the orphans' court terminated Father's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b). We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Moreover, we may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201(Pa. Super. 2000) (*en banc*).

Father's first three appellate issues correspond with the specific grounds for termination under Section 2511(a)(1), (2), (5) and (8); Father argues Sections 2511(a)(5) and (8) together. Father's fourth appellate issue concerns the second element of the bifurcated termination analysis under

Section 2511(b). Father's final appellate issue, alleging CYS did not provide sufficient evidence, is merely a catchall provision. We address the sufficiency of the evidence contemporaneously with our review of Father's more specific issues.

We begin our discussion with a review of the first prong of the termination analysis under Section 2511(a). As we need only to agree with the orphans' court as to one subsection of Section 2511(a), we analyze Father's second appellate issue, which questions whether CYS properly established grounds under Section 2511(a)(2). That section provides in relevant part:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In*

*re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019) (citation omitted). The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *Id*.

In his Brief, Father acknowledges the above elements of Section 2511(a)(2); however, he does not challenge any of the court's corresponding findings. Instead, Father advances a misplaced argument he believes justifies his conduct. Specifically, Father argues that Child's removal was due to *Mother's* incapacity. *See* Father's Brief at 19. Father also seems to claim he could parent Child, but was not motivated to accomplish his reunification goals, because he counted on Child being returned to Mother. *Id.* at 20.

This argument is unavailing. We are unpersuaded by Father's reasoning that he did not directly cause Child's dependency. In fact, Father was just as responsible as Mother. Child had to be placed with Maternal Grandmother at the start of the dependency case, because placement with Father was inappropriate due to his drug abuse and concerns about domestic violence. Father never remedied these conditions, and his refusal to address them caused Child to be without his parental care for years. Although Mother was the primary caregiver during the brief period between the birth of Child and Child's adjudication, this does not excuse Father's inability or refusal to care for Child thereafter. Father was content with Mother raising the Child alone, and then, following the dependency adjudication, Father was content with

- 7 -

Child's placement in Maternal Grandmother's care. Only toward the end of the dependency case, when it became apparent that neither of those options would be realistic, did Father begin to take seriously the court's reunification goals. By that point, Child was without parental care for approximately two years. We conclude the court did not abuse its discretion when it concluded CYS established grounds for termination under Section 2511(a)(2). Because we conclude that termination was appropriate under Section 2511(a)(2), we need not address Father's other appellate issues concerning Section 2511(a)(1), (5) or (8).

Having established the first prong of the termination analysis, we turn now to the second. In his fourth appellate issue, Father argues the court abused its discretion when it found that termination best served Child's needs and welfare under Section 2511(b), which provides in relevant part:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(b).

This Court has explained that:

> [S]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In ***In re C.M.S.,*** 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. ***Id.*** However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. ***Id.*** at 763.

***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa. Super. 2010).

Concerning the bond, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. ***See C.M.K.***, 203 A.2d at 264 (citation omitted); ***see also K.Z.S.***, 946 A.2d at 764 (holding there was no bond worth preserving where the child had been in foster care for most of the child's life, which caused the resulting bond to be too attenuated). We add, the court is not required to use expert testimony to resolve the bond analysis but may rely on the testimony of social workers and caseworkers. ***In re Z.P.***, 994 A.2d 1108, 1121 (Pa. Super. 2010). Finally, we emphasize that "[w]hile a parent's emotional bond with her and/or her child is a major aspect of the § 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." ***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted).

Instantly, the trial court heard expert testimony from Dr. Rosenblum, who recommended termination after opining that the benefits of adoption outweighed any of the detrimental effects of severing the parental rights. However, neither Dr. Rosenblum, nor the CYS caseworker could testify about the significance of the bond between Father and Child. *See* T.C.O., at 11. Father predicates his argument on this fact, adding that Child knows him, refers to him as "Da-Da," and that a bond exists between Child and Father's daughter. *See* Father's Brief at 22-23.

Notwithstanding these points, we conclude the orphans' court did not abuse its discretion when it found termination would best serve Child's needs and welfare. For one, "[a] parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." *In re Z.P.*, 994 A.2d at 1121. And we reiterate that when there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *See K.Z.S.*, 946 A.2d at 762-63. Importantly, the bond analysis does not merely ask whether a bond exists, but whether the bond is worth preserving. The evidence supports the court's conclusion that, whatever the bond was here, termination of this bond was still in Child's best interests.

Father has never provided for Child. Father has never resided with Child, nor had Father consistently visited Child. Father has never participated in Child's medical appointments. And Dr. Rosenblum testified that Father did

not understand Child's special needs.[4] The CYS caseworker explained that, while Child recognized Father, Child look to his foster parents to meet his needs. The court also heard testimony from the visitation aide, who noted that Child refers to his foster parents as mom and dad. The court's reliance on the above testimony was not manifestly unreasonable. Therefore, we find Father's fourth appellate issue is without merit.

In sum, we conclude the orphans' court did not err or abuse its discretion when it determined CYS met its burden to involuntary termination Father's rights. Having concluded that termination was proper under Section 2511(a)(2), we need not address those appellate issues concerning Section 2511(a)(1), (5) or (8). Finally, we conclude further that termination best served Child's needs and welfare under Section 2511(b).

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/1/2021

---

[4] Child was being evaluated for early intervention services, including speech, behavioral, and developmental therapies. **See** N.T., 11/12/20 at 55, 75.

- 11 -